UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, COLUMBIA, SC
2022 JUL -1 AM 11: 38

UNITED STATES OF AMERICA,

PLAINTIFF,

V.                          CR. NO. 0:07-CR-01149-CMC

TIMOTHY WAYNE EDDINGTON,

DEFENDANT,

---

DEFENDANT'S "EMERGENCY" MOTION FOR COMPASSIONATE
RELEASE IN LIGHT OF THE 2018 FIRST STEP ACT
PURSUANT TO 18 U.S.C. § 3582(c)(i)(A) AND COVID-19

---

NOW COMES, THE PRO-SE DEFENDANT, TIMOTHY EDDINGTON
RESPECTFULLY MOTIONS THIS HONORABLE COURT FOR COMPASSIONATE
RELEASE UNDER 18 U.S.C. § 3582(c)(i)(A)(i) AND THE COVID-19
VARIATS, TO REDUCE HIS SENTENCE TO "TIME SERVED". AS
AMENDED BY THE FIRST STEP ACT, THE COMPASSIONATE RELEASE
STATUTE ALLOWS COURTS TO REDUCE SENTENCES FOR "EXTRAORDINARY
AND COMPELLING REASONS" AND THE TOTALITY OF THE
CIRCUMSTANCES WARRANTS RELIEF.

# INTRODUCTION

DEFENDANT SEEKS A SENTENCE REDUCTION FOR THE FOLLOWING REASONS.

FIRST, DEFENDANT'S REQUEST IS TIMELY. HE SUBMITTED HIS COMPASSIONATE RELEASE REQUEST TO THE WARDEN ON APRIL 28, 2022. THAT REQUEST REMAINED PENDING FOR MORE THAN 30 DAYS (SEE EXHIBITS    ) WHICH IS ALL THAT IS REQUIRED. SEE, E.G., UNITED STATES V. HANEY, __ F. SUPP. 3d __, 2020 WL 1821988 AT *3 (S.D.N.Y. APRIL 13, 2020) (TO SATISFY § 3582(c)'S EXHAUSTION REQUIREMENT, AN INDIVIDUAL MUST EITHER EXHAUST ADMINISTRATIVE REMEDIES WITH THE BOP OR "SIMPLY WAIT 30 DAYS AFTER SERVING HIS PETITION ON THE WARDEN OF HIS FACILITY BEFORE FILING A MOTION IN COURT.").

SECOND, THERE EXISTS AN EXTRAORDINARY AND COMPELLING REASON TO GRANT A SENTENCE REDUCTION. DEFENDANT'S OBESITY, SEVERE THYROID DISEASE, CONJESTIVE HEART FAILURE (CHF) HYPERTENSION (HTN), SEVERE OBSTRUCTIVE SLEEP APNEA, C-PAP, DIABETES, CEREBROVASCULOR ACCIDENT OR STROKE) SEVERE PRORIASIS, COPD, ASTHMA, HEMIPLEGIC MIGRAINE, DEEP VEIN THROMBOSIS (DVT) OF THE RIGHT ARM/LEG AND ON WARFARIN, PERPHERAL NEUROPHY, CHRONIC PAIN, KIDNEY DISEASE, COLOSTOMY REVERSAL. BECAUSE OF 20 MAJOR SURGERIES (BOWEL OBSTRUCTION AND COLON AND HERNIA) CAUSING PETITIONER TO HAVE FREQUENT LOOSE BOWL MOVEMENTS SIX TO TEN TIMES A DAY, PLACES HIM AT HIGH RISK FOR SERIOUS ILLNESS FROM THE COVID-19 VARIANT. IN THESE CIRCUMSTANCES, COURTS HAVE LITTLE TROUBLE INTERVENING. SEE, E.G.

(2)

UNITED STATES V. JOHNSON, ___ F. SUPP. 3d ___, 2020 WL 3041923
(D.D.C. MAY 16, 2020) (GRANTING REDUCTION FOR DEFENDANT SERVING
41-MONTH SENTENCE FOR VARIOUS WEAPONS-RELATED OFFENSES
WHERE DEFENDANTS PULMONARY HYPERTENSION, OBESITY, AND PTSD).

THIRD, DEFENDANT IS NOT A DANGER TO ANY PERSON OR TO THE
COMMUNITY. THIS IS ESPECIALLY TRUE CONSIDERING DEFENDANT
NEVER MISSED AN APPOINTMENT WITH HIS COUNSELOR AT "THREE
TREES" CENTER FOR CHANGE AND MENTAL HEALTH THAT THE
COURT ORDERED, (SEE RECORDS FILED WITH THE COURT.) DEFENDANT'S
ALSO POSITIVELY PROGRAMMED WHILE IN BOP CUSTODY, SEE
UNITED STATES V. RODRIGUEZ, ___ F. SUPP. 3d ___, 2020 WL
1627331 AT *1 (E.D. PA, APRIL 1, 2020) (FINDING NO COMMUNITY
DANGER, IN PART, BECAUSE THE INDIVIDUAL "HAS SHOWN
SIGNIFICANT REHABILITATION IN PRISON, DEFENDANT HAS NO
INSTITUTIONAL INFRACTIONS, EARNING HIS GED AND BETTERING
HIMSELF WITH NUMEROUS CLASSES.") (SEE EXS.   ) ALSO (UNIT
TEAMS MEMORANDUM ATTACHED).

FOURTH, THE § 3553(a) FACTORS SUPPORT RELEASE. DEFENDANT
NEEDS TREATMENT FOR HIS MENTAL HEALTH/MEDICAL CONDITIONS, CARE
- OR LACK THEREOF - IS "A FACTOR TO BE HEAVILY WEIGHED" IN THE
§ 3553(a) ANALYSIS. SEE UNITED STATES V. GRIGGS, ___ F. SUPP. 3d
___, 2020 WL 2614867 AT *9 (D.S.C. MAY 22, 2020). § 3553(G)
(2)(D) TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR
VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL
TREATMENT IN THE MOST EFFECTIVE MANNER. (BOP HAS FAILED TO
DO, DEFENDANT HAS BEEN ON THE EDUCATIONAL WAITING LIST SINCE
JUNE 2021 AND STILL HAS BEEN UNABLE TO GET INTO THE GED

CLASS AND EDUCATION),

ALSO, THE PANDEMIC CHANGES § 3553(a)'s PUNISHMENT ANALYSIS
BECAUSE WHEN THE COURT SENTENCED DEFENDANT, IT "DID NOT
INTEND FOR THAT SENTENCE TO INCLUDE INCURRING A GREAT AND
UNFORESEEN RISK OF SEVERE ILLNESS OR DEATH BROUGHT ON BY A
GLOBAL PANDEMIC. UNITED STATES V. ZUKERMAN, __ F. SUPP. 3d __, 2020
WL 1659880 AT *6 (S.D.N.Y. APRIL 3, 2020).

## THE SITUATION IN THE BOP

FIFTH, AT LEAST 55,000 INMATES HAVE CONTRACTED COVID-19 AND
AT LEAST 294 HAVE DIED. AT THE BUTNER COMPLEX, WHERE I'M
INCARCERATED, THE BOP REPORTS, NO POSITIVE INMATE OR STAFF CASES.
IT REPORTS THAT MORE THAN 1650 INMATES AND STAFF HAVE RECOVERED
FROM BEING INFECTED BUT THAT 38 INMATES AND 2 STAFF HAVE DIED
AT THE COMPLEX. AT THE SAME TIME THE BOP'S DATA IS INACCURATE
AND UNDERREPORTED THE PRESENCE OF THE VIRUS GIVEN THE
SIGNIFICANT DECREASE IN TESTING IN RECENT MONTHS AND THE BOP'S
FLAWED RECORD-KEEPING PRACTICES. THOSE RECORD-KEEPING PRACTICES
WERE THE SUBJECT OF RECENT CONGRESSIONAL TESTIMONY BY PROFESSOR
ALISON GUERNSEY. PROFESSOR GUERNSEY NOTES THAT BOP DEATH STATISTICS
ARE NOT REPORTED IMMEDIATELY, DO NOT INCLUDE INMATE WHO CAUGHT
COVID-19 AND WERE RELEASED. PROFESSOR GUERNSEY NOTES THAT THE
BOP ITSELF AGREES THAT ITS REPORTED INFECTION RATES (AND CASE
TOTALS) ARE INACCURATE BECAUSE "THE CUMULATIVE COVID-19
INFECTION DATA THE BOP REPORTS DOES NOT INCLUDE ANYONE WHO
CAUGHT COVID-19 IN PRISON BUT WHO WAS THEN RELEASED." Id. AT 7.
THE UCLA LAW COVID BEHIND BARS DATA PROJECT RATES THE BOP'S DATA

REPORTING AS AN "F."

[2] SEE TESTIMONY OF ALISON K. GUERNSEY, THE FIRST STEP ACT, THE PANDEMIC AND COMPASSIONATE RELEASE; WHAT ARE THE NEXT STEPS FOR THE FEDERAL BUREAU OF PRISONS?, U.S. HOUSE OF REPRESENTATIVES COMMITTEE ON THE JUDICIARY SUBCOMMITTEE ON CRIME, TERRORISM, AND HOMELAND SECURITY (JAN. 21, 2022)(AVAILABLE AT HTTPS://DOCS.HOUSE.GOV/MEETINGS/JU/JU08/20220121/114349/HHRG-117-JU08-WSTATE-GUERNSEYA-20220121.PDF).

SIXTH, THE 14 MONTHS OF DEFENDANTS' TIME IN CUSTODY HAS BEEN UNDER UNEXPECTEDLY HARSH CONDITIONS OF CONFINEMENT.

DEFENDANT HAS BEEN IN CUSTODY SINCE MAY 2021. A SIGNIFICANT PORTION OF DEFENDANTS TIME IN CUSTODY HAS BEEN UNDER PANDEMIC LOCKDOWN CONDITIONS; CONDITIONS THAT WERE FAR HARSHER AND MORE RESTRICTIVE THAN THIS COURT WOULD HAVE ANTICIPATED. THESE CONDITIONS ARE ESPECIALLY HARSH FOR DEFENDANT BECAUSE OF HIS SERIOUS MENTAL AND MEDICAL CONDITIONS, THAT DEFENDANT ISN'T GETTING ADEQUATED TREATMENT, HERE AT FCI BUTNER MED2, NUMEROUS COURTS HAVE CONSIDERED THE HARSH CONDITIONS OF CONFINEMENT WHEN GRANTING MOTIONS FOR COMPASSIONATE RELIEF. UNITED STATES V. HATCHER, 2021 WL 1535310 AT *3 (S.D.N.Y. APR. 19, 2021)(GRANTING MOTION FOR COMPASSIONATE RELIEF FOR VACCINATED INMATE AND NOTING THAT AT THE TIME OF SENTENCING "THE COURT DID NOT ENVISION MS. HATCHER TO SERVE THIS TERM OF IMPRISONMENT IN NEAR-TOTAL LOCKDOWN WITHOUT THE MENTAL HEALTH AND OTHER SUPPORT PROGRAMS THAT THE COURT BELIEVES TO BE CRITICAL TO HER HEALTH AND ABILITY TO REENTER SOCIETY."); UNITED STATES V. ROMERO, 2021 WL 1518622 AT *4 (S.D.N.Y. APR. 16, 2021)("THE PANDEMIC HAS SUBJECTED ROMERO TO FAR MORE

RESTRICTIVE CONDITIONS OF CONFINEMENT, AND HAS PROMPTED LIMITS
ON ACCESS TO VISITORS, INCLUDING FAMILY, FAR BEYOND WHAT THE
COURT EXPECTED AT SENTENCING."); UNITED STATES V. QUINONES, 2021
WL 797835 AT *2 (S.D.N.Y. FEB. 27, 2021)("THE COURT FINDS, AS IT
DID WITH RODRIGUEZ, THAT THE PANDEMIC, BECAUSE OF THE
CONCOMITANT LOCKDOWNS AND RESTRICTION THAT ARE NECESSARY TO
ENSURE INMATE SAFETY, HAS RENDERED QUINONES'S INCARCERATION
"FAR HARSHER AND MORE PUNITIVE THAN THE COURT HAD ANTICIPATED
AT SENTENCING."); UNITED STATES V. MCRAE, NO. 17CR. 643, 2021
WL 142277 AT *5 (S.D.N.Y. JAN. 15, 2021)(GRANTING COMPASSIONATE
RELEASE TO A PRISONER HOUSED AT FCI ALLENWOOD LOW, AND
OBSERVING THAT "A DAY SPENT IN PRISON UNDER EXTREME LOCKDOWN
AND IN WELL-FOUNDED FEAR OF CONTRACTING A ONCE-IN-A-CENTURY
DEADLY VIRUS EXACTS A PRICE ON A PRISONER BEYOND THAT IMPOSED BY
AN ORDINARY DAY IN PRISON"). IN SHORT, THE PANDEMIC HAS
MADE DEFENDANTS PRISON EXPERIENCE SIGNIFICANTLY HARDER
THAN ANTICIPATED.

SEVENTH, I TALKED WITH PROBATION OFFICER MR. JUSTIN SUDDETH
ON 6-24-22, IN MY CASE MANAGER'S OFFICE ABOUT MY MENTAL
HEALTH AND OTHER THINGS, TO MAKE MR. SUDDETH AWARE THAT I'M
STILL NOT RECEIVE MENTAL HEALTH MEDICATION'S AND TREATMENT FOR
DIAGNOSED MENTAL HEALTH CONDITIONS AND THE GOVERNMENT MISS
LEAD THE COURT STATING THAT I COULD WRITE A COP-OUT TO BE
SEEN, WHICH ISN'T TRUE, UNLESS YOU TELL PSYCHOLOGY STAFF THAT
YOUR GOING TO KILL YOURSELF, AND I ASK MR. SUDDETH IF HE
WANTED TO TALK TO MY CASE MANAGER T. CUMMINGS AND HE
WOULD VERIFY MY CLAIMS THAT I NEED HELP.

# BACK GROUND

A) DEFENDANT SUFFERS FROM OBESITY, NUMEROUS MENTAL HEALTH CONDITIONS, HYPERTENSION, SEVERE THYROID DISEASE, EDEMA, CONGESTIVE HEART FAILURE, DIABETES, COPD, ASTHMA, HEMIPLEGIC MIGRAINES, DEEP VEIN THROMBOSIS (BLOOD CLOTS) OF THE RIGHT ARM AND LEG (ON BLOOD THINNERS), PERPHERAL NEUROPHY, CHRONIC PAIN, KIDNEY DISEASE, SEVERE OBSTRUCTIVE SLEEP APNEA, SEVERE PROPRIASIS, COLOSTOMY REVERSAL (20 MAJOR SURGERIES ON BOWEL OBSTRUCTION, COLON / HERNIA, WALKER FOR WALKING ASSISTANCE).

DEFENDANT'S PRESENTENCE REPORT ("PSR") NOTES THAT DEFENDENT WAS BEING TREATED FOR NUMEROUS MENTAL HEALTH CONDITIONS AT "THREE TREES" CENTER FOR CHANGE / MENTAL HEALTH CENTER IN ROCK HILL, SOUTH CAROLINA AND FOR DEFENDANT'S MEDICAL CONDITIONS IN ROCK HILL, S.C. DEFENDANT WAS ALSO PRESCRIBED FIVE MENTAL HEALTH MEDICATIONS FROM "THREE TREES" DOCTOR (PSYCHOLOGIST) THAT THE BOP STAFF REFUSES TO PRESCRIBE DEFENDANT THAT IS HINDERING DEFENDANT'S MENTAL HEALTH PROCESS AND GROWTH THAT DEFENDANT WAS ALSO PRESCRIBED (SEE EXHIBITS ATTACHED WITH COMPASSIONATE RELEASE MOTION). THIS PSR NOTES THAT DEFENDANT IS 5'11" TALL, DEFENDANT WEIGHED OVER 303 POUNDS. AT 5'11", HE HAS A BODY MASS INDEX OF 40.1, WHICH CLASSIFIES HIM AS OBESE.

THE BOP'S INABILITY AND UNWILLINGNESS TO PROVIDE DEFENDANT ADEQUATE AND TIMELY MEDICAL, DENTAL, AND MENTAL HEALTH CARE AND TREATMENT FOR SERIOUS MEDICAL AND MENTAL CONDITIONS IN THE MOST EFFECTIVE MANNER.

DEFENDANT WAS GETTING EFFECTIVE MENTAL HEALTH AND MEDICAL CARE AND TREATMENT OUTSIDE THE BOP SYSTEM, THAT WAS IMPROVING HIS PHYSICAL AND MENTAL HEALTH CONDITIONS DRAMATICALLY.

SINCE DEFENDANT'S RETURN TO THE BOP SYSTEM, THE BOP SENT DEFENDANT TO F.C.I BUTNER MEDIUM 2, WHERE DEFENDANT CANNOT, AND WILL NOT, RECEIVE ADEQUATE AND TIMELY MEDICAL CARE AND TREATMENT FROM THE BOP MEDICAL/MENTAL/DENTAL STAFF FOR THE CONDITIONS DEFENDANT SUFFERS FROM ON A DAILY BASIS AND THAT CONTINUES TO WORSEN DAILY, CAUSING DEFENDANT TO BE UNABLE TO COMPLETE EVERY DAY LIVING (SELF CARE) AND ACTIVITIES.

THE DENIAL OF ADEQUATE AND TIMELY MEDICAL CARE AND TREATMENT HINDERS DEFENDANT FROM PHYSICALLY AND MENTALLY IMPROVING AND THESE SERIOUS MEDICAL AND MENTAL CONDITIONS ARE EXTRAORDINARY AND COMPELLING REASONS TO WARRANT A REDUCTION IN SENTENCE.

# FIRST STEP ACT

SECTION § 3582(C)(1)(A) ALLOWS A COURT TO REDUCE A PERSON'S SENTENCE IF "EXTRAORDINARY AND COMPELLING REASONS WARRANT SUCH A REDUCTION." 18 U.S.C. § 3582(C)(1)(A)(i). AS PART OF THE REFORMS PASSED IN THE FIRST STEP ACT OF 2018, CONGRESS AMENDED § 3582(C)(1)(A) TO ALSO ALLOW A DEFENDANT TO SEEK A REDUCTION DIRECTLY FROM THE COURT. THIS CHANGE CAME AFTER YEARS OF BOP UNDER UTILIZING COMPASSIONATE RELEASE, WHICH WAS PREVIOUSLY IN ITS SOLE DISCRETION TO SEEK. THE OFFICE OF THE INSPECTOR GENERAL FOUND THAT BOP DID NOT PROPERLY MANAGE THE COMPASSIONATE RELEASE PROGRAM, AND IT LACKLUSTER IMPLEMENTATION MEANT THAT MANY INCARCERATED PERSONS DIED AWAITING A FINAL DECISION BY THE BOP DIRECTOR. UNITED STATES V. BROOKER, 976 F.3d 228, 231-32 (2d CIR. 2020). UNDER THE REVAMPED § 3582 (C)(1), A DEFENDANT MAY SUBMIT A MOTION FOR REDUCTION IN SENTENCE AFTER EITHER EXHAUSTING THEIR ADMINISTRATIVE RIGHTS TO APPEAL "OR WAITING 30 DAYS AFTER [THEIR] FIRST REQUEST TO THE PRISON." UNITED STATES V. ALAN, 960 F.3d 831, 834 (6TH CIR. 2020).

CONGRESS'S GOAL IN REVAMPING § 3582(C)(1)(A) WAS TO "CREATE AN AVENUE FOR DEFENDANTS TO SEEK RELIEF DIRECTLY FROM THE COURTS", THEREBY KEEPING THE SENTENCING POWER IN THE JUDICIARY WHERE IT BELONGS. UNITED STATES V. McCOY, 981 F.3d 271, 276 (4TH CIR. 2020) THE SENTENCING COMMISSION HAS NOT ISSUED ANY APPLICABLE POLICY STATEMENTS SINCE THE ENACTMENT OF THE FIRST STEP ACT. THE ONLY POLICY STATEMENTS RELATING TO COMPASSIONATE RELEASE, § 1B1.13 WAS ADOPTED PRIOR TO THE ACTS AMENDMENTS. THE NINTH CIRCUIT HAS HELD THAT "THE CURRENT VERSION OF U.S.S.G. § 1B1.13 IS NOT AN APPLICABLE

POLICY STATEMENT FOR 18 U.S.C. § 3582(c)(1)(A) MOTIONS FILED BY A DEFENDANT, UNITED STATES V. ARUDE, NO. 20-10245, 2021 WL 1307884, AT *4 (9TH CIR. APR. 8, 2021). THE NINTH-CIRCUIT EXPLAINED "THE SENTENCING COMMISSIONS STATEMENTS IN U.S.S.G. § 1B1.13 MAY INFORM A DISTRICT COURTS DISCREATION FOR § 3582(c)(1)(A) MOTION FILED BY A DEFENDANT, BUT THEY ARE NOT BINDING." ID UNDER THE STATUTE, THE DISTRICT COURT MUST ALSO CONSIDER "THE FACTORS SET FORTH IN SECTION 3553(a) TO THE EXTENT THAT THEY ARE APPLICABLE." § 3582(c)(1)(A).

THRESHOLD ELIGIBILITY FOR RELIEF UNDER § 3582(c)(1)(A) HAS TWO REQUIREMENTS: DID THE DEFENDANT EXHAUST ADMINISTRATIVE REMEDIES, AND ARE THERE "EXTRAORDINARY AND COMPELLING REASON" JUSTIFYING RELIEF, IN THIS CASE, DEFENDANT HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES THROUGH A REQUEST TO THE WARDEN AND THE 30 DAYS LAPSED WITHOUT ANY RESPONSE.

THUS, THE QUESTION FOR THIS COURT IS WHETHER HIS UNIQUE CIRCUMSTANCES PROVIDE AN "EXTRAORDINARY AND COMPELLING" BASIS FOR RELIEF, AND WHETHER A REDUCTION IS IN LINE WITH THE § 3553(a) FACTORS.

THE FOURTH CIRCUIT HAS RECENTLY HELD NO APPLICABLE POLICY STATEMENT RESTRICTS THE AUTHORITY OF DISTRICT COURTS TO MAKE THEIR OWN INDEPENDENT ASSESSMENTS OF EXTRAORDINARY AND COMPELLING REASONS TO GRANT RELIEF PURSUANT TO THE FIRST STEP ACT. UNITED STATES V. McCOY, 981 F.3d 271 (4TH CIR. 2020)." DISTRICT COURTS ARE EMPOWERED TO CONSIDER ANY EXTRAORDINARY AND COMPELLING REASONS FOR RELEASE THAT A DEFENDANT MIGHT RAISE." ID. AT 27 (INTERNAL CITATIONS OMITTED). COURTS DO NOT HAVE TO RELY ON SPECIFIC STATUTES—"INDEED, THE VERY PURPOSE OF § 3582(c)(1)(A) IS TO PROVIDE A SAFETY VALUE THAT ALLOWS FOR

sentence reductions when there is not a specific statute that already affords relief but extraordinary and compelling reasons never the less justify a reduction." Id. at 32 (internal citations omitted), furthermore, § 3582(c)(1)(A)(i)" uses the more open-ended extraordinary and compelling reasons standard to capture the truly exceptional cases that fall within no other statutory category." McCoy 30 (internal citations omitted).

In McCoy, the district courts granted the defendants motion for compassionate release and reduced the defendants 35-53 year sentences for robberies and guns to time served, McCoy, 981 F, 3d at 2, In addition to approving of the district courts use of the defendants disproportionately long stacked 924(c) sentences as an extraordinary and compelling reason, the court also looked approvingly upon the courts individualized determinations of each defendants circumstances "the courts took seriously the requirement that they conduct individual inquiries, basing relief not only on the first step acts change to sentencing law under § 924(c) but also on such factors as the defendants relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation and the very substantial term of imprisonment they already served," the court did not require or rely upon physical infirmities or medical diagnoses to find extraordinary and compelling reasons existed. Defendant asks this court to conduct a similarly individualized determination of his circumstances.

EXTRAORDINARY AND COMPELLING REASONS WARRANTING RELIEF

A.) DEFENDANT'S OBESITY, HEART DISEASE, HYPERTENSION, DIABETES, WITH MANY OTHER MEDICAL CONDITIONS DEFENDANTS DETERIORATING MEDICAL CONDITIONS, INCREASE HIS RISK OF SEVERE ILLNESS FROM COVID-19-DELTA,

UNLIKE THE DEFENDANT IN McCOY, WHO HAD NO COMPELLING HEALTH REASONS, DEFENDANT IS OBESE, HAS HYPERTENSION WITH MANY MORE HEALTH AND MEDICAL CONDITIONS, DEFENDANT OBESITY INCREASE HIS RISK OF SEVERE ILLNESS FROM COVID-19, "SEVERE ILLNESS MEANS THAT A PERSON WITH COVID-19 MAY NEED: HOSPITALIZATION, INTENSIVE CARE, A VENTILATER TO HELP THEM BREATH, OR THEY MAY EVEN DIE," ID. "PEOPLE OF ANY AGE WITH THE FOLLOWING CONDITIONS ARE AT INCREASED RISK OF SEVERE ILLNESS FROM COVID-19... OBESITY (BODY MASS INDEX [BMI] OF 30 OR HIGHER)" DEFENDANTS BMI IS 35.4, IN THIS CONTEXT, THE CENTER FOR DISEASE CONTROL (CDC) GROUPS OBESITY WITH DISEASES SUCH AS CANCER, CHRONIC KIDNEY DISEASE, COPD, IMMUNOCOMPROMISED STATE FROM ORGAN TRANSPLANTS, SERIOUS HEART CONDITIONS, SICKLE CELL DISEASE, AND TYPE 2 DIABETES.

OBESITY ALONE HAS BEEN RECOGNIZED BY MANY DISTRICT COURTS AS AN EXTRAORDINARY AND COMPELLING REASON, UNITED STATES V. GONZALEZ, NO. 17-CR-2054-GPC, 2021 WL 37728, AT *5 (S.D. CAL, JAN,5, 2021) (GRANTING MOTION FOR REDUCTION IN SENTENCE BECAUSE "GONZALEZ'S OBESITY PUTS HIM AT INCREASED RISK OF SEVERE ILLNESS SHOULD HE CONTRACT COVID-19); UNITED STATES V. MILES, NO. 2:17 CR 127, 2020 WL 7646415, AT *2 (E.D. CAL, DEC 23, 2020) HOLDING THAT "OBESITY ALONE CAN SUPPORT A MOTION FOR COMPASSIONATE RELEASE");

UNITED STATES v. TOMLINSON, No. CR 1701075 003, 2020 WL 7404639, AT *2 (D. ARIZ. DEC. 17, 2020) ("GIVEN THE INCREASE OF COVID-19 INFECTIONS A FCI-SHERIDAN AND THE CDC'S WARNING THAT OBESITY IS ONE OF THE MOST SERIOUS RISK FACTORS FOR SEVERE ILLNESS FROM THE VIRUS, THE COURT FINDS, AND THE GOVERNMENT NOW CONCEDES (DOC. 219 AT 1), THAT DEFENDANT HAS SHOWN EXTRAORDINARY AND COMPELLING REASONS FOR COMPASSIONATE RELEASE."); UNITED STATES v. GONZALES, No. 3:19-CR-90, 2020 WL 7024905, AT *5 (D. CONN. NOV. 30, 2020) ("BECAUSE MR. GONZALES HAS ESTABLISHED THAT HIS OBESITY ALONE MAY CONSTITUTE AN EXTRAORDINARY AND COMPELLING REASON FOR RELEASE, AND THAT HIS OBESITY INCREASES THE RISK THAT HE WILL EXPERIENCE SEVERE ILLNESS SHOULD HE CONTRACT COVID-19, MR. GONZALES HAS ESTABLISHED AN EXTRAORDINARY AND COMPELLING REASON FOR RELEASE..."); UNITED STATES v. PELICHET, No. 19-CR-40033, 2020 WL 7053309, AT *8 (D.S.D. NOV. 24, 2020) (GRANTING RELEASE AFTER FINDING THAT "PELICHET'S OBESITY ALONE ELEVATES HIS RISK OF SEVERE ILLNESS FROM COVID-19"); UNITED STATES v TAMASOA, No. 2:15-CR-124, 2020 WL 6700416, AT *3 (E.D. CAL. NOV. 13, 2020) (GRANTING RELEASE, DISTRICT COURTS WITHIN THE NINTH CIRCUIT HAVE RECOGNIZED OBESITY GREATLY INCREASE THE RISK OF SERIOUS COVID-19 SYMPTOMS AND COMPLICATIONS AND HAVE GRANTED MOTIONS FOR COMPASSIONATE RELEASE TO INMATES WITH A BODY MASS INDEX WITHIN THE 'OBESE' RANGE."); UNITED STATES v. CAMPANELLA, No. 18-CR-328-12, 2020 WL 4754041, AT *3 (D. COLO. AUG 17, 2020) (GRANTING REDUCTION IN SENTENCE AFTER FINDING THAT "THE MEDICAL EVIDENCE IS RELATIVELY CLEAR THAT MORBID OBESITY IS ONE OF THE STRONGEST RISK FACTORS FOR MORE SEVERE ILLNESS FROM COVID-19"); UNITED STATES v. HAYES, No. 17-CR-20292, 2020 WL 4001903, AT *3 (E.D. MICH. JULY 15, 2020) (GRANTING COMPASSIONATE RELEASE MOTION AFTER FINDING THAT "OBESITY ALONE QUALIFIES AS A RECOGNIZED RISK FACTOR"); UNITED STATES v. MISHLER,

No. 19-CR-105-2, 2020 WL 3791590, AT *2 (N.D. CAL, JULY 7, 2020)(GRANTING REDUCTION IN SENTENCE WHEN ONLY COVID-19 RISK FACTOR WAS SEVERE OBESITY); UNITED STATES V. RICHARDSON, NO 2:17-CR-48, 2020 WL 3402410, AT *3 (E.D. CAL JUNE 19, 2020)("THIS COURT FINDS THAT HYPERTENSION OR OBESITY ALONE - REGARDLESS OF AGE - PLACE A DEFENDANT AT HIGHER RISK OF COVID-19 COMPLICATION.")

 THE CDC STATES THAT INDIVIDUALS WITH OBESITY ARE AT GREATER RISK- NOT ONLY INDIVIDUALS WITH UNCONTROLLED CONDITIONS, IT IS NOT THE MANAGEMENT OF THE CONDITIONS BUT THE CONDITION ITSELF THAT CREATES THE COMPELLING AND EXTRAORDINARY CIRCUMSTANCE. OTHER COURTS HAVE AGREED THAT IT IS THE CONDITION ITSELF THAT PUTS AN INDIVIDUAL AT RISK, AND THAT THE MOMENTARY TREATMENT OR CONTROL OVER THE CONDITION DOES NOT CHANGE THAT FACT. SEE UNITED STATES V. HERNANDEZ, NO. 13-CR-00511(1) JMS, 2020 WL 3453839, AT *6 (D. HAW. JUNE 24, 2020)(FINDING THAT EVEN THOUGH AN INMATES ASTHMA AND HYPERTENSION WERE "WELL-CONTROLLED BY MEDICATION AND TREATMENT, HE IS AMONG THOSE IDENTIFIED BY THE CDC TO HAVE AN ELEVATED RISK FOR COMPLICATIONS FROM COVID-19"); UNITED STATES V. POMPEY, NO. 2:97-CR-638-RB AT *4 (DIST. NEW. MEX. JULY 14, 2020)("THE CDC STATES THAT INDIVIDUALS WITH THESE CONDITIONS ARE AT A GREATER RISK, NOT ONLY INDIVIDUALS WITH UNCONTROLED CONDITIONS.") UNITED STATES V. SALVAGNO, NO. 5:02-CR-51(LEK) 2020 WL 3410661, AT *16 (N.D.N.Y, APR. 23, 2020), RECONSIDERATION DENIED (JUNE 22, 2020)(NOTING ONE SCIENTIFIC STUDY SHOWED THAT "HYPERTENSIVE INDIVIDUALS, MEDICATED OR NOT, FACE AT LEAST A TWO-FOLD RISK OF DEATH FROM COVID-19 COMPARED

---

[14] HTTPS://WWW.CDC.GOV/CORONAVIRUS/2019-NCOV/NEED-EXTRA-PRECAUTIONS/ PEOPLE-WITH-MEDICAL-CONDITIONS.HTML#OBESITY (VISITED JUNE 21, 2021)

TO NON-HYPERTENSIVE INDIVIDUALS (ALTHOUGH, ACCORDING TO THIS STUDY, THE RISK IS HIGHER FOR THOSE WHO ARE NOT TAKING SOME FORM OF MEDICATION") (CITING GAO, ETAL, ASSOCIATION OF HYPERTENSION AND ANTIHYPERTENSIVE TREATMENT WITH COVID-19 MORALITY: A RETROSPECTIVE OBSERVATIONAL STUDY, EUROPEAN HEART JOURNAL, JUNE 5, 2020).

THE CDC ALSO RECOGNIZES HEART CONDITIONS, SUCH AS HEART FAILURE AND HYPERTENSION, AS CONDITIONS THAT CAN MAKE SOMEONE MORE LIKELY TO GET SEVERELY ILL FROM COVID-19[15], COURTS AGREE THESE ARE RISKS ASSOCIATED WITH HYPERTENSION GENERALLY, SEE UNITED STATES V. PINKERTON, NO. 12-CR-30045-3, 2020 WL 2083968, AT *5 (C.D. ILL. APR. 30, 2020); UNITED STATES V. PABON, NO-17-161-1, 2020 WL 2112265, AT *8-9 (E.D. PA MAY 4, 2020) (CITING A STUDY OF 5,700 PATIENTS WITH COVID-19, WITH 56.6% OF THOSE PATIENTS ALSO SUFFERING FROM HYPERTENSION). MANY COURTS HAVE FOUND THAT A DEFENDANT'S PREDIABETES AND HIGH BLOOD PRESSURE CAN CREATE EXTRAORDINARY AND COMPELLING CIRCUMSTANCES[16]

## COVID-19 AND THE BOP

BUTNER MED II FCI, WHERE DEFENDANT IS IMPRISONED, IS CURRENTLY OPERATING AT AN OPERATIONAL "LEVEL 3"[17]

---

[15] HTTPS://WWW.CDC.GOV/CORONAVIRUS/2019-NCOR/NEED-EXTRA-PRECAUTIONS/PEOPLE-WITH-MEDICAL-CONDITIONS, HTML

[16] SEE ORDER, UNITED STATES OF AMERICA V. ALONZO NEIL BROWN, 2:09-CR-295, ECF NO. 332 AT 4-5 (D.S.C. OCTOBER 29, 2020) (COLLECTING CASES).

[17] HTTPS://WWW.BOP.GOV/CORONAVIRUS/COVID19 MODIFIED OPERATIONS GUIDE, JSP (ACCESSED NOV. 18, 2021)

THIS IS THE WORST LEVEL IN A 3-LEVEL SCHEME - IT MEANS THAT
THE MEDICAL ISOLATION RATE IS MORE THAN 7%, THE FACILITY
VACCINATION RATE IS LESS TO 50%, OR THE COMMUNITY TRANSMISSION
RATE IS GREATER THAN 100 PER 100,000 OVER THE LAST 7 DAYS.[18] BUTNER II
ADMITS 355 INMATES AND 33 STAFF HAS BEEN INFECTED WITH COVID-19,[19]
FCI BUTNER MEDIUM II ONLY HAS A POPULATION OF 1,135 TOTAL INMATES,[20]
THIS MEANS ABOUT 31% OF INMATES HAVE BEEN INFECTED, THREE INMATES
HAVE DIED FROM COVID-19.[21] NATIONWIDE, COVID-19 HAS INFECTED OVER
51,000 INMATES AND STAFF WITHIN THE BOP AS OF NOVEMBER 15, 2021.[22]
THE BOP REPORTS 273 DEATHS.[23] Id. ONE STUDY OF STATE AND FEDERAL
CORRECTIONAL FACILITIES ACROSS THE COUNTRY FOUND INMATES ARE 3
TIMES MORE LIKELY TO DIE AND 5.5 TIMES MORE LIKELY TO GET
CORONAVIRUS. Id. CONDITIONS OF IMPRISONMENT CREATE THE IDEAL
ENVIRONMENT FOR THE TRANSMISSION OF CONTAGIOUS DISEASES.[25]
"INCARCERATED / DETAINED PERSONS LIVE, WORK, EAT, STUDY, AND
RECREATE WITHIN CONGREGATE ENVIRONMENTS, HEIGHTENING THE
POTENTIAL FOR COVID-19 TO SPREAD ONCE INTRODUCED.[26] THE
CENTER FOR DISEASE CONTROL (CDC) RECOGNIZES THE DIFFICULTY
OF PREVENTING THE INTRODUCTION OF COVID-19 INTO PRISON
FACILITIES:

---

[18] Id.
[19] HTTPS://WWW.BOP.GOV/CORONAVIRUS/ (ACCESSED NOVEMBER 18, 2021)
[20] HTTPS://WWW.BOP.GOV/LOCATIONS/INSTITUTIONS/BTF/ (ACCESSED
NOVEMBER 18, 2021)
[21] Id. [22] Id. [23] Id.

THERE ARE MANY OPPERTUNITIES FOR COVID-19 TO BE INTRODUCED INTO A CORRECTIONAL OR DETENTION FACILITY, INCLUDING DAILY STAFF INGRESS AND EGRESS; TRANFER OF INCARCERATED/DETAINED PERSONS BETWEEN FACILITIES AND SYSTEMS, TO COURT APPEARANCES, AND TO OUTSIDE MEDICAL VISITS; AND VISITS FROM FAMILY, LEGAL REPRESENTATIVES, AND OTHER COMMUNITY MEMBERS. SOME SETTINGS, PARTICULARLY JAILS AND DETENTION CENTERS, HAVE HIGH TURNOVER, ADMITTING NEW ENTRANTS DAILY WHO MAY HAVE BEEN EXPOSED TO COVID-19 IN THE SURROUNDING COMMUNITY OR OTHER REGIONS.

[24] BRENDON SALONER, PHD, KALIND PARISH, MA, JULIE A. WARD, MN, RN, ETAL, COVID-19 CASES AND DEATHS IN FEDERAL AND STATE PRISONS, JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION (JULY 8, 2020) HTTPS://JAMANETWORK.COM/JOURNALS/JAMA/ARTICLE-ABSTRACT/2768249

JUSTIN CARISSIMO, INMATES ARE 5 TIMES MORE LIKELY TO GET CORONAVIRUS THAN THE GENERAL POPULATION, STUDY SAYS, CBS NEWS (JULY 11, 2020) HTTPS://WWW.CBSNEWS.COM/NEWS/CORONAVIRUS-PRISON-INMATES-MORE-LIKELY-TO-GET-INFECTED-STUDY-SAYS/

[25] JOSEPH A, BICK, INFECTION CONTROL IN JAILS AND PRISONS, 45 CLINICAL INFECTIOUS DISEASE 1047, 1047 (2007) HTTPS://DOI.ORG/10.1086/521910

[26] CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC), INTERIM GUIDANCE ON MANAGEMENT OF CORONAVIRUS DISEASE 2019 (COVID-19) IN CORRECTIONAL AND DETENTION FACILITIES (MAR. 23, 2020) HTTPS://WWW.CDC.GOV/CORONAVIRUS/2019-NCOV/COMMUNITY/CORRECTION-DETENTION/GUIDANCE-CORRECTIONAL-DETENTION.HTML

CROWDING, INADEQUATE VENTILATION, AND SECURITY ISSUES ALL CONTRIBUTE TO THE SPREAD OF INFECTIOUS DISEASE IN JAIL AND PRISONS[27], MEDICAL CARE OF PRISONERS IS LIMITED AT THE BEST OF TIMES[28]

---

[27]
MARTIN KASTE, PRISONS AND JAILS WORRY ABOUT BECOMING CORONAVIRUS' INCUBATORS; NPR (MAR. 13, 2020), HTTPS://WWW.NPR.ORG/2020/03/13/815002735/PRISONS-AND-JAILS-WORRY-ABOUT-BECOMING-CORONAVIRUS-INCUBATORS.

[28] SEE U.S. DEPT OF JUSTICE OFFICE OF THE INSPECTOR GENERAL, REVIEW OF THE FEDERAL BUREAU OF PRISONS MEDICAL STAFFING CHALLENGES (MAR. 2016), HTTPS://OIG.JUSTICE.GOV/REPORTS/2016/E1602.PDF (FINDING THAT THE BOP EXPERIENCED CHRONIC MEDICAL STAFF SHORTAGES AND FAILS TO TAKE ADEQUATE MEASURES TO ADDRESS THEM, LEADING TO PROBLEMS MEETING THE MEDICAL NEEDS OF PRISONERS, REQUIRING THE USE OF OUTSIDE HOSPITALS, AND ENDANGERING THE SAFETY AND SECURITY OF INSTITUTIONS); U.S. DEPT OF JUSTICE OFFICE OF THE INSPECTOR GENERAL, THE IMPACT OF AN AGING INMATE POPULATION ON THE FEDERAL BUREAU OF PRISONS (REV. FEB. 2016), HTTPS://OIG.JUSTICE.GOV/REPORTS/2015/E1505.PDF (FINDING THAT BOP FACILITES AND SERVICES, INCLUDING MEDICAL SERVICES, WERE INADEQUATE TO MEET THE NEEDS OF AN AGING PRISON POPULATION LEADING TO DELAYS IN MEDICAL TREATMENT FOR PRISONERS WITH ACUTE AND CHRONIC HEART AND NEUROLOGICAL CONDITIONS, WHO WAIT AN AVERAGE OF 114 DAYS TO SEE MEDICAL SPECIALIST); DAVID PATTON STATEMENT FROM FEDERAL DEFENDERS OF NEW YORK (MAR 8, 2020),

HTTPS://FEDERALDEFENDERSNY.ORG/ABOUT-US/NEWS/STATEMENT-FROM-FEDERAL-DEFENDERS-OF-NEW-YORK.HTML.

18

# VACCINATION

DEFENDANTS VACCINATION DOES NOT MEAN THE DANGER COVID-19 POSES TO HIM IS GONE. DATA SUGGESTS THE PFIZER VACCINE SPECIFICALLY MAY BE LESS EFFECTIVE IN PEOPLE WITH OBESITY,[29] ANOTHER STUDY STATES THE PFIZER VACCINE PROTECTS LESS AGAINST THE DELTA VARIANT OF COVID-19 KNOWN AS B.1.617.2, DISCOVERED IN INDIA.[30]

MANY COURTS, INCLUDING THIS ONE, HAVE GRANTED COMPASSIONATE RELEASE TO VACCINATED PRISONERS, SEE UNITED STATES V. GADSDEN, NO. 2:02-840, ECF NO. ___ (D.S.C. JUNE 8, 2021); UNITED STATES V. DARBY, NO. 1:10-CR-00432, 2021 WL 2463841, AT *2 (N.D. OHIO JUNE 17, 2021) ("THE COURT ACKNOWLEDGES THAT MR. DARBY IS VACCINATED SO HE IS AT A REDUCED RISK OF CONTRACTING A SERIOUS FORM OF COVID-19 BUT BEING VACCINATED DOES NOT AUTOMATICALLY PRECLUDE A DEFENDANT FROM DEMONSTRATING" EXTRAORDINARY AND COMPELLING REASON" JUSTIFYING A SENTENCE MODIFICATION.); UNITED STATES V. REYES, 2021 U.S. DIST. LEXIS 99864, *6 (D. CONN. MAY 20, 2021)(GRANTING COMPASSIONATE RELEASE OF DEFENDANT WHO RECEIVED BOTH DOSES OF THE VACCINE, "NEWLY AVAILABLE DATA DESCRIBE" BREAKTHROUGH INFECTION'S CAUSED BY COVID-VARIANTS IN VACCINATED POPULATIONS); UNITED STATES V. SPRINGS, 1:10-CR-00364-WDQ, ECF NO. 48 (D. MD, MAY 10, 2021) (GRANTING CR TO INDIVIDUAL WHO RECEIVED ONE DOSE OF COVID-19 VACCINE BECAUSE HIS "VACCINATION STATUS DOES NOT GREATLY DECREASE THE COURTS CONCERN THAT HIS MEDICAL CONDITIONS INCREASE HIS RISK

---

[29] HTTPS://WWW.THEGUARDIAN.COM/WORLD/2021/FEB/28/PFIZER-VACCINE-LESS-EFFECTIVE-OBESITY-STUDY (VISITED JUNE 21, 2021)

[30] HTTPS://WWW.WEBMD.COM/VACCINES/COVID-19-VACCINE/NEWS/20210604/PFIZER-VACCINE-INDIA-VARIANT (VISITED JUNE 21, 2021)

OF SEVERE ILLNESS DUE TO COVID-19"); UNITED STATES V. SWEET, NO. 07-20369, 2021 WL 1339574, AT *3 (E.D. MICH. APR. 9, 2021), ORDER AMENDED AND SUPERSEDED, NO. 07-20369, 2021 WL 1430834 (E.D. MICH. APR. 15, 2021) (GRANTING CR DESPITE MR. SWEET RECEIVING VACCINE AND RECOVERING FROM COVID-19 NOTING BREAKTHROUGH INFECTIONS IN MICHIGAN AND RISK FROM COVID-19 REINFECTION); UNITED STATES V. BOZON PAPPA, NO. 95-CR-00084, 2021 WL 1439714, AT *4 (S.D. FLA. APR. 1, 2021) (GRANTING CR EVEN THOUGH SHE "HAS RECEIVED A COVID-19 VACCINE, [MS. BOZON PAPPA] SUBMITTED EVIDENCE THAT THE VACCINE MAY NOT BE COMPLETLEY EFFECTIVE IN PERSONS WITH OBESITY"); UNITED STATES V. PARISH, 2:07-CR-578-RMG, D.E. 158 AT 4-5 (D.I.S.C. MAR. 17, 2021) (GRANTING COMPASSIONATE RELEASE BASED ON COVID-19 RISK FACTORS, NOTWITHSTANDING RECEIPT OF FIRST VACCINE DOSE); UNITED STATES V. MANGLONA, 3:14-CR-05393-RJB (W.D. WASH. MAR. 3, 2021) D.E. 205 775 AT 3 (GRANTING REDUCTION IN SENTENCE AFTER VACCINATION); UNITED STATES V. MOYNIHAN, 1:10-CR-10288 MLW, ECF NO. 239 (D. MASS. APRIL 20, 2021) (GRANTING COMPASSIONATE RELEASE TO VACCINATED DEFENDANT WITH LEUKEMIA IN ORAL RULING); UNITED STATES V. McLEAN, 1:97-CR-00163-LMB (E.D. VA. MAR. 11, 2021) (GRANTING CR TO DEFENDANT WITH HEART DISEASE WHO RECOVERED FROM COVID-19 AND RECEIVED ONE DOSE OF VACCINE); UNITED STATES V. HERNANDEZ SANDOVAL, 14-CR-5105 (W.D. WA. FEB. 22, 2021) (GRANTING CR TO DEFENDANT WITH KIDNEY DISEASE, TRANSPLANT, AND DIABETES WHO RECEIVED ONE DOSE OF VACCINE AND RECOVERED FROM COVID-19); UNITED STATES V. MURAKAMI, NO. 1:17-CR-10346-DPW, D.E. 80 (D. MASS. FEB. 25, 2021) (GRANTING CR TO HYPERTENSIVE DEFENDANT WHO HAD RECEIVED ONE DOSE OF THE VACCINE, AND WOULD RECEIVE SECOND DOSE PRIOR TO RELEASE); UNITED STATES V. BRADSHAW, NO. 1:96-CR-10032-DPW (D. MASS. MAR. 4, 2020) (GRANTING CR TO DEFENDANT WHO HAD RECEIVED BOTH MODERNA VACCINES DOSES); UNITED STATES V. RICKS, 1:17-CR-00134-JMS-TAB

(S.D. IND, APR. 22, 2021)(GRANTING CR TO DEFENDANT WITH CHRONIC KIDNEY DISEASE, HYPERTENSION, AND ANEMIA WHO HAD RECEIVED ONE DOSE OF VACCINE WHOSE HEALTH DECLINED AFTER RECOVERING FROM COVID-19), SEE ALSO UNITED STATES V WHITE, NO. 3:17-CR-00104-2, 2021 WL 268719, AT *4 (M.D. TENN, JAN. 27, 2021)(GRANTING CR DESPITE VACCINATIONS UNDERWAY AND NOTING THAT "JUST THIS MONTH VARIANTS TO THE SARS-COV-2 STRAIN WERE IDENTIFIED THAT MAY (OR MAY NOT) ALLOW THE VIRUS TO SPREAD MORE QUICKLY, LEAD TO "MORE SEVERE OR LESS SEVERE ILLNESS," AND "EVADE VACCINE-INDUCED IMMUNITY,"); UNITED STATES V. HATCHER, NO. 18-CR-454-10(KPF), 2021 WL 1535310, AT *3(S.D. N.Y, APR. 19, 2021)(GRANTING COMPASSIONATE RELEASE TO FULLY VACCINATED WOMAN, BASED ON THE EXTREME CONDITIONS OF CONFINEMENT DURING THE PANDEMIC).

EXHAUSTION OF PETITIONER'S ADMINISTRATIVE RIGHTS

PETITIONER HAS EXHAUSTED ALL OF HIS ADMINISTRATIVE RIGHTS
BEFORE BRINGING HIS MOTION TO THIS COURT:

1.) PETITIONER'S ORIGINAL REQUEST FOR COMPASSIONATE RELEASE TO THE
WARDEN OF HIS INSTITUTION WAS SENT ON 4-28 , 2022.

2) MORE THAN 30 DAYS HAVE PASSED AFTER PETITIONER'S REQUEST WAS
MADE TO THE WARDEN WITHOUT ANY RESPONSE (SEE EX. A )

A REDUCTION IS CONSISTENT WITH APPLICABLE POLICY STATEMENT
ISSUED BY THE SENTENCING COMMISSION

1.) PETITIONER HAS BEEN IN CUSTODY SINCE PETITIONER'S ARREST ON
N/A

2.) THERE IS NOT A SUBSTANTIAL RISK THAT PETITIONER WILL ENGAGE
IN CRIMINAL CONDUCT OR ENDANGER ANY PERSON OR THE COMMUNITY.

THIS COURT SHOULD GRANT THE MODIFICATION BECAUSE "EXTRAORDINARY
AND COMPELLING REASONS WARRANT SUCH A REDUCTION" IN DEFENDANT
CASE, IN ACCORDANCE WITH U.S.S.G. § 1B1.13 COMMENT (N)(A)(ii).

CONGRESS CHANGED THE SENTENCING COMMISSION WITH DEFINING
"EXTRAORDINARY AND COMPELLING REASONS" FOR A SENTENCING
REDUCTION, 28 U.S.C. § 994(+), AND THE SENTENCING COMMISSION
SET OUT FOR CATEGORIES OF SUCH CIRCUMSTANCES IN THE

22

ALTERNATIVE, SUCH THAT "EXTRAORDINARY AND COMPELLING REASONS EXIST UNDER ANY OF THE CIRCUMSTANCES" SET OUT IN APPLICATION NOTE 1, U.S.S.G. § 1B1.13, COMMENT (N.1). IN THIS CASE, DEFENDANT SATISFIES APPLICATION NOTE 1(A)(ii), WHICH STATES:

(ii) THE DEFENDANT IS--

(I) SUFFERING FROM A SERIOUS PHYSICAL OR MEDICAL CONDITION,
(II) SUFFERING FROM A SERIOUS FUNCTIONAL OR COGNITIVE IMPAIRMENT, OR,
(III) EXPERIENCING DETERIORATION OF PHYSICAL OR MENTAL HEALTH BECAUSE OF THE AGING PROCESS, THAT SUBSTANTIALLY DIMINISHES THE ABILITY OF THE DEFENDANT TO PROVIDE SELF CARE WITHIN THE ENVIRONMENT OF A CORRECTIONAL FACILITY, FROM WHICH HE OR SHE IS NOT EXPECTED TO RECOVER

## EXTRAORDINARY AND COMPELLING REASONS

A COURT GENERALLY "MAY NOT MODIFY A TERM OF IMPRISONMENT ONCE IT HAS BEEN IMPOSED." 18 U.S.C. § 3582(c). AN EXCEPTION TO THIS RULE EXISTS WHEREBY A COURT "MAY REDUCE THE TERM OF IMPRISONMENT" IF THE COURT "FINDS THAT EXTRAORDINARY AND COMPELLING REASONS WARRANT SUCH A REDUCTION." Id. UPON A FINDING OF EXTRAORDINARY AND COMPELLING CIRCUMSTANCES, COURTS MUST THEN LOOK TO "THE FACTORS SET FORTH IN SECTION 3553(a) TO THE EXTENT THAT THEY ARE APPLICABLE." Id.

SECTION 3582(c)(i)(A) STATES THAT SENTENCE REDUCTION BE CONSISTENT WITH "APPLICABLE POLICY STATEMENTS." RELEVANT TO THE COURT'S INQUIRY THEN, IS THE APPLICABILITY OF U.S.S.G. § 1B1.13

COMMENT 1(A) ("POLICY STATEMENT"), THAT STATEMENT LIMITS COMPELLING CIRCUMSTANCES TO THREE CATEGORIES - APPLICATION NOTES 1(A) THROUGH (C), COVERING A DEFENDANTS HEALTH, AGE, AND FAMILY CIRCUMSTANCES - AS WELL AS A CATCH-ALL CATEGORY, APPLICATION NOTE 1(D), ALLOWING THE BOP TO IDENTIFY "OTHER REASONS" THAT MAY QUALIFY.

RECENTLY, THE FOURTH CIRCUIT TOOK THIS ISSUE ON APPEAL, UNITED STATES V. McCOY, __ F.3d ___, 2020 U.S. DIST. LEXIS 193993, 2020 WL 7050097 (4TH CIR. 2020). THE COURT HELD THAT THERE "IS AS OF NOW NO 'APPLICABLE' POLICY STATEMENT GOVERNING COMPASSIONATE RELEASE MOTIONS FILED BY DEFENDANTS UNDER THE RECENTLY AMENDED § 3582(c)(1)(A), AND AS A RESULT, DISTRICT COURTS ARE "EMPOWERED" TO CONSIDER ANY EXTRAORDINARY AND COMPELLING REASON FOR RELEASE THAT A DEFENDANT MIGHT RAISE." 2020 U.S. DIST. LEXIS 193993, [WL] AT *9 (CITING UNITED STATES V. BROOKER, 976 F.3d 228, 230 (2ND CIR, 2020) THUS, IN THIS CIRCUIT, DISTRICT COURTS MAY CONSIDER REASONS BEYOND THOSE INDICATED IN THE SENTENCING GUIDELINES POLICY STATEMENT IN MAKING DETERMINATION ABOUT EXTRAORDINARY AND COMPELLING CIRCUMSTANCES FOR COMPASSIONATE RELEASE MOTIONS UNDER SECTION 3582(c)(1)(A).

THE WORD "EXTRAORDINARY" IS COMMONLY UNDERSTOOD TO MEAN "GOING BEYOND WHAT IS USUAL, REGULAR, OR CUSTOMARY," OR "EXCEPTIONAL TO A VERY MARKED EXTENT." EXTRAORDINARY, MERRIAM-WEBSTER DICTIONARY (2020); SEE ALSO, EXTRAORDINAY, BLACK'S LAW DICTIONARY (11TH ED. 2019) ("BEYOND WHAT IS USUAL CUSTOMARY, REGULAR, OR COMMON

THE WORD "COMPELLING" MEANS "FORCEFUL" "DEMANDING ATTENTION,"

24

OR "CONVINCING" COMPELLING, MARRIAM-WEBSTER DICTIONARY (2020);
SEE ALSO COMPELLING NEED, BLACK'S LAW DICTIONARY (11TH ed, 2019)
("A NEED SO GREAT THAT IRREPARABLE HARM OR INJUSTICE WOULD
RESULT IF IT IS NOT MET,")

THE BALANCE OF THE § 3553(a) FACTORS SUPPORT GRANTING THIS
SENTENCE REDUCTION. THE NATURE AND CHARACTERISTICS OF THE OFFENSE
AND PETITIONER'S HISTORY AT THE TIME OF SENTENCE MAY NOT HAVE BEEN
CLEAR ERROR, HOWEVER, THE PETITIONER'S MEDICAL AILMENT IN
LIGHT OF THE FIRST STEP ACT OF 2018 DEMONSTRATES A SENTENCE
REDUCTION IS JUSTIFIED. A MODIFIED SENTENCE OF "TIME SERVED"
HAS SERVED, AND WOULD CONTINUE TO SERVE, AS A ADEQUATE DETERRENCE
AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES § 3553(a)(2)(B).

THE ARGUMENT PRESENTED IN THE PRECEDING PARAGRAPH
CONCERNING HIS REHABILITATION AND MEDICAL AILMENTS DEMONSTRATES
THAT THOSE SENTENCE OBJECTIVES HAVE BEEN ADDRESSED WELL BY THE
SENTENCE THUS FAR ALREADY SERVED.

DEFENDANT'S OBESITY, DIABETES, HEART DISEASE (HEART ATTACK,
QUADRUPLE BYPASS SURGERY) AFEB BREATHING PROBLEMS CONSISTENTLY
BEEN A STRONG PREDICTOR OF SEVERE COVID-19 ILLNESS ACROSS A
NUMBER OF STUDIES. Additionally, ALL OF DEFENDANT'S MEDICAL
CONDITIONS ARE IDENTIFIED AS CONDITIONS THAT INCREASE RISK FOR
COVID-19, THEY ALSO CONSISTENTLY LEAD UNDERLYING CONDITIONS-
PRESENT IN 46.6% AND 59.5%, RESPECTIVELY- IN COVID-19
HOSPITALIZATIONS.

THE BOP HAS FAILED TO PROTECT, AND CONTINUES TO FAIL TO
PROTECT INMATES FROM THE COVID-19 PANDEMIC, ACROSS THE BOP,

DEFENDANT IS HOUSED IN "LA" HOUSING UNIT A FCI BUTNER MED. II
IN NORTH CAROLINA. THE UNIT HAS APPROXIMATELY 7,500 SQUARE
FEET OF COMMON AREA TO ACCOMODATE MORE THAN 120 INMATES.
GIVEN THE CLOSE PROXIMITY TO OTHER INMATES, IT IS IMPOSSIBLE
TO PRACTICE SOCIAL DISTANCING IN THIS INADEQUATE SPACE THAT
INMATES ARE BEING HOUSED IN.

## § 3553(A) FACTORS, ARGUEMENTS

THIS IS AT HEART A SENTENCING CASE IN THAT THE DEFENDANT IS SEEKING A REDUCTION IN HIS SENTENCE, OR RIS IN BOP PARLANCE. THE GOVERNMENT IS OPPOSED TO COMPASSIONATE RELEASE FOR 98% OF DEFENDANTS, AS IS THE BOP, THAT HAS BEEN THE GOVERNMENTS DEFAULT POSITION IN ALL BUT A HANDFUL OF COMPASSIONATE RELEASE CASES UNDER THE FIRST STEP ACT! BEFORE THE FIRST STEP ACT, THE GOVERNMENT AND THE BOP REALLY CONTROLLED THESE SAD SITUATIONS. COURTS WERE POWELESS TO INTERVENE, ABSENT A GREEN LIGHT FROM THE BOP. THAT ALL CHANGED WITH THE FIRST STEP ACT ON DECEMBER 21, 2018, AND APPROPRIATELY SO. DECISIONS ABOUT SENTENCING [ SHOULD ] NOT BE LEFT TO EMPLOYEES OF THE SAME DEPARTMENT OF JUSTICE THAT CONDUCTS THE PROSECUTION," SESTER V. UNITED STATES, No.566 U.S. 231, 132 S.CT. 1463, 182 L.Ed.2d.455 (2012). THIS COURT, NOT THE GOVERNMENT, MUST EVALUATE THE 18 U.S.C. 3553(a) FACTORS AS THEY APPLY TO DEFENDANT.

KEVIN ZEICH WAS GRANTED COMPASSIONATE RELEASE, BUT DIED AT FMC BUTNER BEFORE HE COULD FLY HOME TO CALIFORNIA, UNITED STATES V. ZEICH, NO. 1:93 CR 5217 (E.D. CALIFORNIA)

TO OUR KNOWLEDGE, THE GOVERNMENT HAS NOT CONTESTED COMPASSIONATE RELEASE IN ONLY 5 SUCH CASES: UNITED STATES V. CHEATHAM, NO. 3:06 CR 95 (E.D. TENNESSEE); UNITED STATES V. EVANS, NO. 4:15 CR 15 (S.D. TEXAS); UNITED STATES V. LEGGITT, NO. 4:12 CR 366 (E.D. ARKANSAS); UNITED STATES V. BAKOWSKI, NO. 8:09 CR 491 (M.D. FLORIDA); AND UNITED STATES V. GASICH, NO. 2:14 CR 63 (N.D. INDIANA).

Judge O'Neill in Fresno help in lobbying the BOP for Zeich's release, twice calling the general counsel in an attempt to speed the process up. As did Judge Fuste in San Juan, in United States v. Olivera, No. 3:13CR111 (D. Puerto Rico), in which Edmundo Olivera died at FMC Butner before he could get to the airport. And, in United States v. Cheatham No. 3:06CR95 (E.D. Tennessee) the first such case under the First Step Act, Judge Varnam in Knoxville ordered the release of Steven Cheatham on January 31, 2019. Cheatham though died later that day at FMC Butner, unaware he was a free man. These are the scenarios we do NOT want to see in this case.

United States v. Garcia, No. 2:11CR935 (C.D. California) was a case very similar to this one, as are United States v. Evans, No. 4:15CR15 (S.D. Texas), United States v. Adams, No. 4:09CR115-3 (N.D. Texas), United States v. Leggitt, No. 4:12CR366-6 (E.D. Arkansas), United States v. McGraw, No. 2:02CR18 (S.D. Indiana) United States v. Bakowski, No. 8:09CR491 (M.D. Fla.), United States v. Brittner, No. 9:16CR15 (D. Montana) United States v. Peterson, No. 7:12CR15-1 (E.D. N.C.), United States v. Beck, No. 1:13CR186-6 (M.D. N.C.), United States v. Gray No. 2:02CR18-13 (S.D. Indiana), United States v. Spears, No. 3:98CR208 (D. Oregan), United States v. McQueen, No. 5:09CR233 (E.D. N.C.), United States v. Privette, No. 7:07CR133 (E.D.N.C.), United States v. Barr, No. 5:90CR45 (E.D. N.C.), United States v. Camp, No. 5:11CR155 (E.D.N.C.), United States v. Bradshaw, No. 1:15CR422 (M.D.N.C.), United States v. Mitchell, No. 2:13CR20265 (W.D. Tennessee), United States v. Gasich, No. 2:14CR63 (N.D. Indiana) and United States v. Laughlin, No. 3:12CR30081 (C.D. Illinois). In each of these First Step Act cases compassionate release was granted, in most of them over the Government's strong opposition.

SEE ALSO UNITED STATES V. JACKSON, NO. 1:95CR508 (N.D. ILLINOIS), NOT A COMPASSIONATE RELEASE CASE, BUT A FIRST STEP ACT CASE, JACKSON WAS A MAJOR LEADER OF A VIOLENT CHICAGO DRUG GANG, THE BLACK GANGSTER DISCIPLE NATION, AND RESPONSIBLE FOR MOVING 4.5 KILOGRAMS OF CRACK COCAINE A DAY BEFORE HE WAS ARRESTED IN 1995. ON NOVEMBER 13, 2019, OVER STRONG GOVERNMENT OPPOSITION, JACKSON'S SENTENCE WAS REDUCED FROM 100 YEARS TO 20 YEARS, RESULTING IN HIS IMMEDIATE RELEASE.

CERTAINLY ALL AGREE THE OFFENSE HERE WAS SERIOUS, HENCE THE SENTENCE OF 34 MONTHS, THE OFFENSES WERE SERIOUS TOO IN UNITED STATES V. McGRAW, NO. 2:02 CR 18-1 (S.D. INDIANA) AND UNITED STATES V. GRAY, NO. 2:02 CR 18-13 (S.D. INDIANA), OSCAR McGRAW AND WILLIAM GRAY WERE CODEFENDANTS AND MEMBERS OF A VIOLENT MOTORCYCLE GANG, THOUGH UNPROVEN, THERE WERE HINTS OF PRIOR HOMICIDES IN INDIANA AND CALIFORNIA, BOTH RECEIVED LIFE SENTENCES, BUT WERE THIS YEAR GRANTED COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT, BY CHIEF JUDGE JANE MAGNUS-STINSON, OVER THE GOVERNMENTS STRONG OBJECTION, VERY SIMILAR TO THIS CASE, McGRAW WAS ORDERED RELEASED ON MAY 9, 2019 AND GRAY ON SEPTEMBER 20, 2019.

ON JUNE 28, 2019 JUDGE CATHERINE EAGLES ORDERED ANGELA BECK RELEASED, IN UNITED STATES V. BECK, NO. 1:13CR186 (M.D. N.C.), ALSO OVER THE GOVERNMENTS DANGEROUSNESS OBJECTION, AS THE OFFENSE INVOLVED DRUGS AND FIREARMS.

DANIEL JACKSON PETERSON WAS 74 WHEN SENTENCED IN A DRUG TRAFFICKING CASE, AND HE SHOT AT OFFICERS ATTEMPTING TO ARREST HIM. NONETHELESS, OVER THE GOVERNMENT'S STRONG OBJECTION, CHIEF JUDGE TERRENCE BOYLE ORDERED COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT ON MAY 4, 2019 IN

UNITED STATES V. PETERSON, NO. 7:12 CR 15 (E.D.N.C.)

THE GOVERNMENT OPPOSED COMPASSIONATE RELEASE ON THE GROUND OF DANGEROUSNESS, NOT ONLY IN McGRAW, GRAY, BECK, AND PETERSON, BUT ALSO IN UNITED STATES V. GARCIA, NO. 2:11 CR 935 (C.D. CALIFORNIA), UNITED STATES V. ADAMS, NO. 4:09 CR 115 (N.D. TEXAS), AND UNITED STATES V. BRITTNER, NO. 9:16 CR 15 (D. MONTANA). IN BRITTNER, THE GOVERNMENT AGREED BRITTNER WAS TERMINALLY ILL, THEY JUST DIDN'T THINK HE WAS DYING QUICKLY ENOUGH, CHIEF JUDGE CHRISTENSEN GAVE APPROPRIATELY SHORT SHRIFT TO THAT ARGUMENT.

SEE ALSO UNITED STATES V. BELLAMY, 2019 U.S. DIST. LEXIS 124219 (D. MINNESOTA, JULY 25, 2019) UNITED STATES V. CLYNE, 2019 U.S. DIST. LEXIS 123505 (D. IDAHO, JULY 22, 2019), AND UNITED STATES V. JOHNS, 2019 U.S. DIST. LEXIS 107850 (D. ARIZONA, JUNE 27, 2019). FOR THE MOST PART, PERHAPS $2/3$ OF THESE CASES, NEW OF COURSE SINCE THE FIRST STEP ACT BECAME LAW ON DECEMBER 21, 2018, ARE BEING DECIDED WITHOUT A HEARING.

THE GOVERNMENT'S ARGUMENT IN THESE CASES, AS IN THIS CASE, IS ORDINARILY TWO-PRONGED, THE THESIS IS THAT THE DEFENDANT IS MUCH HEALTHIER THAN CLAIMED, AND THAT HIS RELEASE WOULD JEOPARDIZE THE PUBLIC SAFETY. JUST AS COURTS ARE GRANTING THESE MOTIONS RIGHT AND LEFT, ALL OVER THE COUNTRY, THE GOVERNMENT IS LOSING THESE CASES RIGHT AND LEFT IN COURTS ALL OVER THE COUNTRY. THE GOVERNMENT IS THOUGH CONSISTANT IN ITS ARGUMENT, BUT IT WILL NEED MORE TO TURN BACK THE TIDE, AS CANUTE LEARNED IN 1028. INTERESTINGLY, TO OUR KNOWLEDGE THE GOVERNMENT HASS APPEALED NONE OF ITS NUMEROUS LOSSES IN THESE CASES.

WHY THE GOVERNMENTS DEFAULT POSITION IN THESE SAD CASES IS ALWAYS "NO" IS A MYSTERY, IN THAT THE PRESIDENT, THE ATTORNEY GENERAL, THE DOJ INSPECTOR GENERAL, THE SENTENCING COMMISSION,

AND DOZENS OF MEMBERS OF BOTH HOUSES OF CONGRESS, OF BOTH PARTIES, HAVE BEEN PRESSING FOR MORE FREQUENT USE OF COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT. INDEED, THE PRESIDENT IN THE STATE OF THE UNION ADDRESS ON FEBRUARY 3, 2019, WAS UNDERSTANDABLY PROUD OF THE FIRST STEP ACT. CHANGE IS HARD THOUGH, AND FOR SO MANY YEARS PRIOR TO THE FIRST STEP ACT ON DECEMBER 21, 2018, THE BOP IN EFFECT WAS IN CHARGE. THE BOP WAS THE GATEKEEPER ON COMPASSIONATE RELEASE, AND ITS POSITION WAS GROUNDED NOT ON ANY CONGRESSIONAL ENACTMENT, OR ON PRONOUNCEMENT OF THE SENTENCING COMMISSION, BUT ON ITS OWN IN HOUSE POLICIES, WHICH WERE OFTEN IN CONFLICT WITH STATUTES OR SENTENCING COMMISSION SENTIMENTS.

IT IS ABUNDANTLY CLEAR THAT DEFENDANT WELL MEETS THE CRITERIA FROM COMPASSIONATE RELEASE, AND IS IN A DEBILITATED MEDICAL CONDITION. THE BOP DOES NOT NEED DEFENDANT TO TELL THEM WHAT HIS MEDICAL ISSUES ARE, THEY SEE HIM $^{24}/_7$ AND HAVE ALL OF HIS RECORDS FROM THE DAY HE ENTERED CUSTODY, AND THE BOP KNOWS HIS RELEASE PLAN, TO GO HOME AND LIVE WITH HIS FAMILY AND TO CONTINUE HIS REHABILITATIVE GOALS. DEFENDANT HAS SERIOUS MEDICAL ISSUES AND CONDITIONS, KEEPING HIM INCARCERATED AT THIS POINT IS EXPENSIVE AND COUNTER PRODUCTIVE. ACCORDING TO THE MOST RECENT, AOC MEMORANDUM OF AUGUST 1, 2018, IT COSTS $36,000 A YEAR TO HOUSE SOMEONE IN THE BOP SYSTEM, AND SURELY THE COST IS FAR HIGHER FOR DEFENDANT. COMPASSIONATE RELEASE NOW WOULD IN NO WAY MINIMIZE THE SEVERITY OF HIS OFFENSE, NOR ENDANGER ANYONE OR ANYTHING. DEFENDANT HAS MEDICAL ISSUES AND CERTAINLY IN A DEBILITATED MEDICAL CONDITIONS.

ALL ADMINISTRATIVE REMEDIES FOR SEEKING COMPASSIONATE RELEASE DIRECTLY FROM THE BOP HAVE BEEN EXHAUSTED, HENCE OUR

MOTION. DEFENDANT CLEARLY MEETS THE BOP STANDARDS, SET OUT IN PROGRAM STATEMENT 5049.49 AND 5050.50 FOR COMPASSIONATE RELEASE. DEFENDANT ALSO MEETS THE COMPASSIONATE RELEASE CRITERIA OF 18 U.S.C. 3582(C)(1)(A)(i) AND SECTION 1B1.13, FEDERAL SENTENCING GUIDELINES, AND THE COMMENTARY TO SECTION 1B1.13, HE IS IN A DEBILITATED MEDICAL CONDITION.

THE FACTORS SET OUT IN 18 U.S.C. 3553(a) WILL, IN THIS INSTANCE, BE SATISFIED BY COMPASSIONATE RELEASE. HE HAS ZERO INTEREST IN REOFFENDING AND IS INSTEAD FOCUSED ON KEEPING BODY AND SOUL TOGETHER.

AND NOT TO MAKE LIGHT OF A VERY SERIOUS MATTER, WE SUBMIT THAT STEVIE WONDER COULD SEE THAT DEFENDANT ISN'T OF ANY DANGER TO ANY PERSON OR THE COMMUNITY. DEFENDANT IS TRULY A CHANGED MAN IN SO MANY WAYS. IT DOES HAPPEN, THOUGH NOT AS OFTEN AS WE ALL WOULD LIKE, SOME OF THESE SAD CASES MAY BE RELATIVELY CLOSE CALLS, THIS ONE HOWEVER IS NOT ONE OF THEM.

THE BALANCE OF THE $ 3553(a) FACTORS SUPPORT GRANTING THIS SENTENCE REDUCTION. THE NATURE AND CHARACTERISTICS OF THE OFFENSE AND PETITIONERS HISTORY AT THE TIME OF SENTENCE MAY NOT HAVE BEEN CLEAR ERROR, HOWEVER, THE PETITIONERS MEDICAL AILMENT IN LIGHT OF THE FIRST STEP ACT OF 2018 DEMONSTRATES A SENTENCE REDUCTION IS JUSTIFIED. A MODIFIED SENTENCE OF "TIME SERVED" HAS SERVED, AND WOULD CONTINUE TO SERVE, AS A ADEQUATE DETERRENCE AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES $ 3553(a)(2)(B).

THE ARGUMENT PRESENTED IN THE PRECEDING PARAGRAPH CONCERNING HIS REHABILITATION AND MEDICAL AILMENTS DEMONSTRATES THAT THOSE SENTENCE OBJECTIVES HAVE BEEN ADRESSED WELL BY

THE SENTENCE THUS FAR ALREADY SERVED,

DEFENDANTS OBESITY, SEVERE ASTHMA, AND HYPERTENSION HAS
CONSISTENTLY BEEN A STRONG PREDICTOR OF SEVERE COVID-19 ILLNESS
ACROSS A NUMBER OF STUDIES. ADDITIONALLY, ALL OF DEFENDANTS
MEDICAL CONDITIONS ARE IDENTIFIED AS CONDITION THAT INCREASE
RISK FOR COVID-19. THEY ALSO CONSISTANTLY LEAD UNDERLYING
CONDITIONS PRESENT IN 46.6% AND 59.5% RESPECTIVELY-IN
COVID-19 HOSPITALIZATIONS,

THE BOP HAS FAILED TO PROTECT, AND CONTINUES TO FAIL TO
PROTECT, INMATES FROM THE COVID-19 PANDEMIC, ACROSS THE BOP,
DEFENDANT IS HOUSED IN "LA" HOUSING UNIT AT F.C.I. BUTNER MED
II IN NORTH CAROLINA,, THE UNIT HAS APPROXIMATELY 7,500
SQAURE FEET OF COMMON AREA TO ACCOMODATE MORE THAN 120
INMATES, GIVEN THE CLOSE PROXIMITY TO OTHER INMATES, IT IS
IMPOSSIBLE TO PRACTICE SOCIAL DISTANCING IN THIS INADEQUATE
SPACE THAT INMATES ARE BEING HOUSED IN,

# UNREPORTED CASE LAW

IT IS IMPORTANT TO UNDERSCORE, AS DISCUSSED ABOVE, (THAT THE DEFENDANT NEED NOT BE ON "DEATHS' DOOR".) OF THE CASES WE HAVE CITED IN WHICH COMPASSIONATE RELEASE HAS BEEN GRANTED UNDER THE FIRST STEP ACT, SOME WERE CASES OF TERMINAL ILLNESS, WHILE OTHERS WERE CASES OF DEBILITATED MEDICAL CONDITION OR ELDERLY WITH MEDICAL CONDITION. NOT ALL WERE TERMINALLY ILL BY ANY MEANS. IT IS DIFFICULT TO TRACK THESE FOLKS DOWN AFTER RELEASE FROM THE BOP SYSTEM, BUT DEFENDANT DOES HAVE SOME LIMITED INFORMATION:

A.) NORMAN HSU HAS DIED, SIX MONTHS POST-RELEASE, UNITED STATES V. HSU, NO. 1:07 CR 1066 (S.D. N.Y.)

B.) BARBARA GASICH DID NOT LIVE LONG AFTER HER RELEASE, UNITED STATES V. GASICH, NO. 2:14 CR 63 (N.D. INDIANA)

C.) WILLIAM GRAY LIVED SEVEN WEEKS AFTER HIS RELEASE, UNITED STATES V. GRAY, NO. 2:02 CR 18-13 (S.D. INDIANA)

D.) STEVE BRITTNER HAS DIED, UNITED STATES V. BRITTNER, NO. 9:16 CR 15 (D. MONTANA)

E.) DEFENDANT BELIEVE THAT STEVEN ADAMS HAS DIED, UNITED STATES V. ADAMS, NO. 4:09 CR 115 (N.D. TEXAS)

F.) WE BELIEVE THAT STEVEN ADAMS HAS DIED, UNITED STATES V. ADAMS, NO. 4:12 CR 306 (E.D. ARKANSAS)

G.) STEVEN CHEATHAM DIED THE DAY HE WAS ORDERED RELEASED, UNITED STATES V CHEATHAM, NO. 3:06 CR 95 (E.D. TENNESSEE).

H) OSCAR MCGRAW, NINE MONTHS POST-RELEASE, REMAINS ALIVE IN MONTANA, UNITED STATES V. MCGRAW, NO. 2:02 CR 18-1 (S.D. INDIANA).

I.) ANGELA BECK, EIGHT MONTHS POST-RELEASE, REMAINS ALIVE IN NORTH CAROLINA, UNITED STATES V. BECK, NO. 1:13 CR 186-6 (M.D.N.C.)

J.) Daniel Peterson, nine months post-release, remains alive in North Carolina, United States v. Peterson, No. 7:12 CR15 (E.D.N.C.)

I have no knowledge as to the other cases we have cited previously. Of course the First Step Act is but 14 months old at the time, enacted December 12, 2018, and the first compassionate release order under the act was in Cheatham on January 31, 2019. As of now one I don't know if any of these released thus far has lived more than a year.

## DEFENDANT HAS A SOLID RELEASE PLAN

THANKFULLY THE DEFENDANT HAS A SAFE HOME WITH HIS MOTHER, MS. BARBARA EDDINGTON, 1083 CHANDLER DRIVE, ROCKHILL S.C. 29730 AND CONTINUE TREATMENT WITH HIS DOCTORS. THE DEFENDANT WILL BE CAPABLE OF ISOLATION HIMSELF FOR THE DURATION OF THE PANDEMIC. THE DEFENDANT HAS THE SUPPORT OF HIS ENTIRE FAMILY AND FRIENDS IN MEETING HIS REHABILITATIVE GOALS, ESPECIALLY HIS MOTHER WHOM THE DEFENDANT WILL RESIDE WITH. THE DEFENDANT IS 50 YEARS OLD WITH SERIOUS MEDICAL CONDITIONS AND IS COMMITTED TO HIS REHABILITATION AND REBUILDING THE RELATIONSHIP WITH HIS FAMILY, FRIENDS AND COMMUNITY. THE DEFENDANT REMAINS RESOLUTE IN HIS DECISION TO ABANDON HIS FORMER LIFESTYLE AND IS FURTHER DETERRED BY HIS WILL TO REHABILITATE HIMSELF, AND LIVE OUT THE LAST REMAINING DAYS WITH HIS FAMILY, AND LOVE ONES.

THE DEFENDANT WILL BE ON __1__ YEARS OF SUPERVISED RELEASE DURING WHICH TIME THIS HONORABLE COURT CAN RECOMMIT HIS CUSTODY BACK TO THE BUREAU OF PRISONS. THE DEFENDANT IS COMMITTED TO ABIDING BY ANY AND ALL FURTHER CONDITIONS AND MODIFICATIONS THAT THIS COURT DEEMS APPROPRIATE TO ASSURE THAT HE WILL NO LONGER ENGAGE IN ANY CRIMINAL ACTIVITY. THE DEFENDANT IS WELL AWARE THAT THE COURTS MODIFICATIONS TO HIS SENTENCE COULD INCLUDE INCREASING THE PERIOD OF SUPERVISED RELEASE OR SERVING HIS SUPERVISED RELEASE ON HOME CONFINEMENT (SEE 18 U.S.C. 3553(a)(3) INSTRUCTING THE COURTS TO CONSIDER "THE KINDS OF SENTENCES AVAILABLE.

THEREFORE, THE SECTION 3553(a) FACTORS SUPPORT REDUCING THE DEFENDANT'S SENTENCE TO "TIME SERVED", DEFENDANT ISN'T A DANGER TO ANY PERSON OR COMMUNITY, DEFENDANT IS 50 YEARS OLD. DUE TO DEFENDANT'S MEDICAL AND MENTAL HEALTH WORSENING ON A DAILY BASES, AND EXTRAORDINARY AND COMPELLING REASONS ALONG TO WARRANT RELIEF,

## CONCLUSION

BASED ON THE FOREGOING, THE DEFENDANT RESPECTFULLY REQUESTS THAT THIS COURT GRANTS HIS MOTION, REDUCE HIS CUSTODIAL SENTENCE TO "TIME SERVED" AND ORDER HIS IMMEDIATE RELEASE FROM BOP CUSTODY, SO THAT HE MAY BEGIN SERVING HIS 1 YEARS TERM OF SUPERVISION.

RESPECTFULLY SUBMITTED,

DATE: 6-27-22

s/ Timothy Eddington

TIMOTHY EDDINGTON #15729-171

FEDERAL CORRECTIONAL INSTITUTION 2

P.O. BOX 1500

BUTNER, N.C. 27509

37